553 So.2d 1022 (1989)
Dominic A. "Mickey" La NASA
v.
William FORTIER, C.P.A. and Touche, Ross & Co.
No. 89-CA-0566.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1989.
Writ Denied February 16, 1990.
Marian Mayer Berkett, Bernard Marcus, Deutsch, Kerrigan & Stiles, New Orleans, for plaintiffs/appellees.
John Gregory Odom, Stephen W. Rider, Kim M. Boyle, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendant/appellee.
Before GARRISON, CIACCIO and BECKER, JJ.
BECKER, Judge.
This matter arises from a disqualification hearing held by the trial court on the motion of defendant William Fortier to disqualify counsel for defendant Touche Ross & Co. Touche Ross applied for supervisory writs from the trial court's judgment disqualifying Malcolm Monroe and the law firm of Deutsch, Kerrigan and Stiles as counsel for Touche Ross. This Court has decided to handle this matter as an expedited appeal.
Fortier and Touche Ross are co-defendants in this malpractice action instituted *1023 by Fortier's former clients, Mr. and Mrs. Dominic LaNasa. Fortier is a certified public accountant and presently a partner in Touche Ross. Plaintiffs, the LaNasas, became Fortier's clients while he was a sole practitioner. Fortier continued to handle the LaNasas' account after he became a partner in J.K. Byrne and Company (also a named defendant in the LaNasa lawsuit). In February 1985, Touche Ross bought out J.K. Byrne and Fortier became a partner with Touche Ross.
The initial lawsuit was filed on January 28, 1988. Notice of this litigation was given to the defendants prior to the actual filing of the suit. On January 26, 1988, the law firm of Deutsch, Kerrigan and Stiles was retained to represent Touche Ross in this matter. Malcolm Monroe was the lawyer assigned to handle this matter.
On the following day, at the instruction of Touche Ross' managing partner in New Orleans, Fortier telephoned Monroe to arrange a meeting to discuss the factual basis for the litigation. The telephone conversation covered the arrangement for the meeting and a discussion of the factual nature of the LaNasa claim. On January 28, Monroe, Fortier, Robert A. Peyroux (the managing partner of the Touche Ross New Orleans office), Thomas Lawler (the associate general counsel of Touche Ross), and Joe Spilman (an associate of Deutsch, Kerrigan and Stiles), all met to explore the factual basis for the lawsuit. This was the only face to face meeting that Monroe had with Fortier.
After the meeting of January 28, 1988, Monroe had no further meetings or telephone conversations with Fortier until March 14, 1988 at which time Monroe made it clear to Fortier that he was not representing Fortier in the LaNasa suit. Fortier was told that he should obtain separate counsel.
The only other activity which Monroe took part, in reference to Fortier, was to obtain for Fortier from plaintiff's counsel an extension of time in which to answer the petition.
Defendant Fortier filed the motion to disqualify Deutsch, Kerrigan and Stiles on the basis that he was led to believe that Deutsch, Kerrigan would be representing him as well as Touche Ross. According to Fortier, in its course of representing him, Deutsch, Kerrigan conducted extensive interviews with him, and obtained all of his personal documents which included documents having to do exclusively with his personal exposure, pre-dating his affiliation with Touche Ross. Defendant/appellee Fortier bases his belief of representation on a letter sent to Ms. Brenda Thompson of Crum and Forster Management Company from Thomas Lawler, associate general counsel of Touche Ross, dated February 9, 1988, which provided that
"[p]ursuant to our telephone discussion of yesterday and our agreement, Touche Ross has retained Bill Monroe of Deutsch, Kerrigan & Stiles to protect its interest, and that of Mr. Fortier, pending determination of the insurance coverage."
Fortier argues that since Deutsch, Kerrigan represented both himself and Touche Ross until March 14, 1988, when he was informed that as a potential conflict existed between himself and Touche Ross, Fortier should retain separate counsel, Deutsch, Kerrigan & Stiles should be barred from continuing to represent Touche Ross in this matter.
After a full evidentiary hearing on this matter, the trial court granted Fortier's motion for disqualification finding that an attorney-client relationship did exist in this case, and while no privileged information may have been disclosed by Fortier, disqualification was required "because of the need to avoid even the appearance of impropriety."
While we agree with the trial court that an attorney-client relationship may have existed between Fortier and Monroe, and that no privileged information was given by Fortier to Monroe, we do not believe that the harsh remedy of disqualification is applicable in this matter.
Establishment of an attorney-client relationship is adequately proven when it is shown that the advice and assistance are *1024 sought and received in matters pertinent to his profession or when the agreement of representation has been made under conditions acceptable to both parties. State v. Green, 493 So.2d 1178 (La.1986); See also McDaniel v. Department of Safety and Permits, 270 So.2d 290 (La.App. 4th Cir. 1972). What is critical is that a person must seek legal advice from a professional legal advisor acting in his capacity as such. Green, supra; 8 Wigmore, Evidence, Sections 2294-2300. The existence of such a relationship turns upon the client's subjective belief that the attorney-client relationship exists. Louisiana State Bar Association v. Bosworth, 481 So.2d 567 (La.1986).
In the case at bar, appellee, Fortier, testified that he truly believed that Monroe, and Deutsch, Kerrigan and Stiles were representing him in the instant matter. The letter from Thomas Lawler and the conversations with Monroe could reasonably lead Fortier to believe that an attorney-client relationship existed. Further, this court finds that is not uncommon for corporate counsel to represent an individual corporate official when he is sued as a result of actions allegedly performed within the ambit of his official duties. When this occurs, corporate counsel becomes counsel for the individual as well as counsel for the corporation, even if the corporation pays all of the fee. An implied relationship between corporate counsel and the individual officer arises. See E.F. Hutton v. Brown, 305 F.Supp. 371 (S.D.Tex.1969).
We find in this case that such an implied relationship existed between Fortier and Monroe of Deutsch, Kerrigan and Stiles. Monroe, upon retention by Touche Ross, became counsel for Touche Ross and Fortier. The correspondence between Thomas Lawler and Fortier strengthens the existence of an implied relationship.
However, we do not find that simply because an attorney-client relationship existed between Fortier and Monroe there is any need to disqualify Monroe and Deutsch, Kerrigan and Stiles as counsel for Touche Ross.
Both the First Circuit and Third Circuit Courts of Appeal have held in analogous situations that disqualification was not required when the attorney withdrew from representing one of the two parties he had previously represented simultaneously. See de la Vergne v. de la Vergne, 361 So.2d 1234 (La.App. 1st Cir.1978), and Brasseaux v. Girouard, 214 So.2d 401 (La. App. 3rd Cir. 1968).
In de la Vergne, supra, the defendant (brother of the plaintiff) attempted to disqualify plaintiff's counsel as counsel had previously represented both parties in a succession proceeding which involved the same subject matter as the instant case. The court held that where there was no giving of confidential information by the defendant or misuse of any such information, assuming it was given, by the attorney for the plaintiffs in the partition suit, said attorney did not have to be disqualified from representing the plaintiffs.
In Brasseaux, supra, an insured attempted to disqualify counsel for his insurer after the attorney withdrew from a joint representation of both but continued to represent the insurer in the same litigation. The attorney withdrew from representing the insured after a policy defense was discovered. The court found that in suits where counsel simultaneously represents the insurer and the insured, communications made by the insured to the insurer's counsel during the period of simultaneous representation are not privileged as against the co-client, at least where the issue to which the communications relate concern matters of the legal representation of the insured.
We analogize the present case to the relationship existing between an insured and the insurer. Just as an insured has an obligation to cooperate with his insurer in the defense of litigation, so does Fortier have an obligation as an employee and partner of Touche Ross to aid in the defense of litigation brought against Touche Ross as a result of Fortier's actions as a partner and/or employee of Touche Ross. Thus, any communications made by Fortier to Monroe would not be privileged as to Touche Ross. Any disclosures made would *1025 be considered as made for the benefit of both parties in the defense of the matter.
Several federal courts have adopted similar views on communications imparted to counsel during joint representation of multiple parties. In E.F. Hutton v. Brown, 305 F.Supp. 371, at 393 (S.D.Tex.1969), the court reasonded
"that information imparted to the common attorney relating to the subject of the joint representation is imparted for the mutual benefit of all the joint clients and is therefore not privileged against any of them."
Judge Heeve, of the Eastern District Court of Louisiana, relied upon Allegaert v. Perot, 565 F.2d 246 (2nd Cir.1977) in the matter of Domed Stadium Hotel, Inc. v. Holiday Inns, Inc., 479 F.Supp. 465 (E.D. La.1979), to deny defendant's motion to disqualify plaintiff's counsel. In Domed Stadium Hotel, Inc., the court, in rejecting the motion to disqualify plaintiff's counsel, did not even reach the issue of whether a "substantial relationship" existed between the subject matter of the attorney's previous and present representation.
The court looked to the language of the Second Circuit in Allegaert, which provided that
"before the substantial relationship test is ever implicated, it must be shown that the attorney was in a position where he could have received information which his former client might have reasonably have assumed the attorney would withhold from his present client." Allegaert, supra at 250.
In Allegaert, the attorney who was sought to be disqualified was presently representing corporate parties involved in bankruptcy proceedings and had previously represented a connected corporation which was the subject of the bankruptcy. The court denied the motion for disqualification finding that none of the parties seeking disqualification had any expectation that the communications disclosed would be kept secret from the attorney's current clients.
In the instant case, we can not say that Fortier had any expectations that any disclosures made to Monroe would have been kept secret from Touche Ross. It is clear from the record Fortier knew from the initiation of the instant litigation that Touche Ross had been named as a defendant because of his involvement in the Internal Revenue Service audit of the LaNasas and the subsequent criminal prosecution. Also, we find that the presence of Robert Peyroux, managing partner of the Touche Ross New Orleans office, and Thomas Lawler, general counsel for Touche Ross, at the meeting between Fortier and Monroe gives much credence to the fact that Touche Ross was indeed privy to whatever communications were made by Fortier.
Further, it is evident from the record that Touche Ross was the primary client of Deutsch, Kerrigan and Stiles. Mr. Peyroux was the person who initiated the retention of Deutsch, Kerrigan and Stiles to represent Touche Ross and Fortier, pending determination of errors and omissons insurance coverage for Fortier. We hold that any information imparted to Monroe by Fortier was for the mutual benefit of Touche Ross and Fortier.
Therefore, while we find that an attorney-client relationship existed between Fortier and Monroe, we do not find that Fortier anticipated that any disclosures made to Monroe would not be imparted to Touche Ross. As all disclosures were made for the benefit of both parties, there is no conflict of interest present in Malcolm Monroe, and Deutsch, Kerrigan and Stiles continuing in the representation of Touche Ross in the instant litigation.
Accordingly, the trial court's granting of defendant, William Fortier's, motion to disqualify Malcolm Monroe and Deutsch, Kerrigan and Stiles is hereby reversed.
REVERSED.